WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher F. Castillo, | No. CV 11-0712-PHX-RCB (JFM) |
| Plaintiff, | **ORDER** |
| vs. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Christopher F. Castillo brought this civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Director Charles L. Ryan, Warden Carson McWilliams, Corrections Officer (CO) II Webster, CO II Bravo, CO II Reagan, and Sergeant Hetricks (Doc. 31). Before the Court is a Motion to Dismiss filed by Defendants Ryan, McWilliams, Bravo, Reagan, and Hetricks (State Defendants)[1] for failure to exhaust administrative remedies (Doc. 58).[2] The motion is fully briefed (Docs. 63, 65). The Court will deny the motion.

**I.     Background**

Plaintiff's claims stem from an alleged excessive force incident that occurred on

---

[1] Webster is represented by separate counsel.

[2] State Defendants also moved to dismiss Plaintiff's state law negligence claims but withdrew that section of the motion upon avowal of Plaintiff's attorney that only federal claims were asserted. Accordingly, the Court does not address that aspect of State Defendants' motion.

November 27, 2010 (Doc. 31 at 2). Plaintiff presented the following facts: When Webster was uncuffing Plaintiff, Webster yanked Plaintiff's hand (id.). Plaintiff asked Bravo why Webster had done that and Bravo responded that he did not know and that they "should kiss and make up" (id. at 3). Ten minutes later, Webster and Bravo returned to Plaintiff's cell to perform a search (id.). Reagan was at the unit's control panel and could see into Plaintiff's cell (id. at 3-4). Webster ordered Plaintiff to cuff up and he complied (id. at 3). Webster then attacked him by grabbing his head and neck and slamming his head into the wall (id.). Webster continued the attack by punching and kicking him (id.). Plaintiff made eye contact with Bravo in an attempt to get his help, but Bravo did not come to his aid (id.). Plaintiff briefly lost consciousness (id.). When he awoke, Webster was still striking him (id.). The other inmates began making noise to attract the attention of other staff to come and assist Plaintiff (id.). Bravo then said "that's enough" and pulled Webster off of Plaintiff (id.). Webster broke free and kicked Plaintiff seven more times (id.). Bravo pulled Webster off of Plaintiff again and blocked Webster from reentering the cell (id.). Bravo removed Plaintiff to a shower room and initiated the Incident Command System (id. at 4). Webster removed Plaintiff's handcuffs while yelling obscenities at him (id.). After additional staff arrived, Plaintiff was handcuffed and taken to the medical unit (id.). Plaintiff was then airlifted to the hospital (id.). Plaintiff alleged his injuries included a concussion, sprained wrist, chipped tooth, vision problems, shoulder damage, headaches, and mental injury (id. at 6). Plaintiff acknowledged the prison initiated an investigation, interviewed him on multiple occasions, and took pictures of his injuries on at least three occasions (id. at 4). Plaintiff's allegations are supported by three inmate declarations (Doc. 31-1 at 3-11).[3] Plaintiff seeks compensatory and punitive damages (Doc. 31 at 13). Defendants were ordered to answer the respective claims against them (Doc. 39). State Defendants move to dismiss for failure to exhaust (Doc. 58).

---

[3] Page citation refers to the page number in the Court's Case Management/Electronic Case Filing system.

## II. Exhaustion

### A. Legal Standard

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

### B. Parties' Contentions

#### 1. State Defendants

State Defendants move to dismiss Plaintiff's Amended Complaint on the ground that he failed to exhaust his administrative remedies (Doc. 58). In support, they submit the Declaration of Aurora Aguilar, an ADC Central Office Hearing Officer (Doc. 58, Ex. A, Aguilar Decl. ¶ 1). Aguilar's declaration is supported by ADC Department Order (DO) 802, *Inmate Grievance System,* effective July 13, 2009, modified by Director's Instruction (DI) 287 (Doc. 58, Ex. B, DO 802 and DI 287), and copies of Plaintiff's grievances (Doc. 58, Ex. A, Attach. 1, Plaintiff's grievances). Aguilar declares that she is an ADC Hearing Officer whose duties include reviewing, investigating, and tracking non-medical grievance appeals (Aguilar Decl. ¶ 1). Aguilar asserts that at the time relevant to Plaintiff's claims, ADC's administrative remedies procedure was governed by DO 802, which was modified by DI 287

1  (id. ¶ 5). Inmates may use the grievance procedure for issues related to any aspect of
2  institutional life or condition of confinement that directly and personally affects the inmate
3  (id. ¶ 6, DO 802.01 § 1.1.1). A copy of the grievance procedure is available in reception
4  centers and is provided to inmates during orientation (id. ¶ 10, DO 802.09 § 1.2).

5  The non-medical standard grievance procedure is generally as follows: (1) an inmate
6  must attempt to informally resolve a complaint, such as discussion with staff most
7  responsible for the issue or submit an inmate letter (Doc. 58, Ex. B, DI 287 at 802.02 § 1.1);
8  (2) if the inmate is unable to resolve the issue through informal means, he may then file an
9  informal complaint by inmate letter with his assigned CO III within 10 working days after
10 he becomes aware of the specific problem (id. at 802.02 § 1.2); (3) if the inmate is not
11 satisfied with the CO III's response, he may file a formal grievance within 5 working days
12 from receipt of the response, which the Deputy Warden answers (id. at 802.03 §§ 1.1 and
13 1.5); (4) if the inmate is not satisfied with that response, he may file a grievance appeal to the
14 complex Warden within 5 working days of the receipt of the formal grievance response (id.
15 at 802.05 § 1.1); and (5) if the inmate is not satisfied with the response to his grievance
16 appeal, he may appeal to the ADC Director within 5 working days of receipt of the response
17 from the Warden (id. at 802.07 § 1.1). Expiration of the time limit for a response at any level
18 in the process entitles the inmate to proceed to the next level of review (id. at 802.01 § 1.11).
19 (Aguilar Decl. ¶ 7).

20 Aguilar attests that she reviewed the standard ADC Grievance Appeal Log and
21 Plaintiff submitted one final grievance appeal for Director-level review on January 14, 2011.
22 (Aguilar Decl. ¶ 14.) Aguilar asserts that the grievance contains no allegations regarding
23 State Defendants (id. ¶¶ 15-17). Aguilar further asserts that there were no references to the
24 Count II Defendants, only a single reference to Reagan, and several references to Bravo (id.).

25 State Defendants take no position regarding exhaustion of Plaintiff's claim against
26 Webster (Doc. 58 at 10). Based on Aguilar's declaration, however, State Defendants argue
27 that Plaintiff's claims against them must be dismissed for failure to exhaust (id. at 10-14).
28 They contend that Plaintiff's grievance addressed only Webster's behavior and did not

- 4 -

1 address systemic issues against officials in the prison chain of command (id. at 10). Regarding Count I, State Defendants assert that although Plaintiff mentioned Bravo and Reagan in his grievance, he did not seek sanctions against them specifically (id. at 12-14). As to Count II, State Defendants assert that because Plaintiff failed to grieve deliberate indifference against Ryan, McWilliams, and Hetrick, for negligent hiring, failure to train, and failure to supervise, ADC had no notice of a claim against them (id. at 10-12). State Defendants contend these are separate issues from Webster's behavior and, therefore, the State Defendants should be dismissed for failure to exhaust administrative remedies against them (id. at 10-14).

### 2. Plaintiff's Response

Plaintiff initiated the grievance process on November 29, 2010, by completing an informal Inmate Letter describing the incident, his injuries, and his desired results (Doc. 63, Ex. A, Inmate Letter). Plaintiff specifically named Webster, Bravo, and Reagan, and "request[ed] that all parties who had a hand in [his] brutal assault be terminated." (id.). On December 8, 2010, Assistant Deputy Warden (ADW) Kane responded, stating that the matter was under criminal and administrative investigation and the matter could not be informally resolved (id., Inmate Letter Response). On December 9, 2010, Plaintiff initiated the formal process by submitting an Inmate Grievance (id., Inmate Grievance). On December 15, 2010, ADW Kane responded that the matter was under criminal and administrative investigation and the issue could not be resolved at that time (id., Inmate Grievance - GF Supplement). On December 16, 2010, Plaintiff filed an Inmate Grievance Appeal of Kane's decision to the Warden (id., Inmate Grievance Appeal). Deputy Warden Credo responded for the Warden on December 28, 2010 (id., Inmate Grievance Appeal with Response). The response stated that the matter was under criminal investigation (id.). On January 14, 2011, Plaintiff filed an appeal of the Warden's decision to the Director (id., Inmate Grievance Appeal). On February 24, 2011, the Director's Office responded to the appeal stating that appropriate action has been taken but that the actions were confidential (id., Director's Response).

Plaintiff contends that he properly and timely exhausted his administrative remedies

1 and provided sufficient facts to prison officials to put them on notice of his claims (Doc. 63
2 at 1). Regarding Count I, Plaintiff asserts that in describing Bravo and Reagan's actions in
3 his grievance and requesting that all parties involved be terminated, he did give sufficient
4 notice to prison officials (id. at 13). Plaintiff contends an assault on a restrained inmate itself
5 implicates failure of training and supervision (id. at 5). Plaintiff further contends that his
6 reference to wanting "all involved" terminated raised systemic concerns (id.). In addition,
7 Plaintiff points out that he was never notified of the results of the investigation because
8 inmates are not provided with personnel information (id.). Therefore, he asserts that he was
9 denied the detailed information that the State Defendants claim he should have included in
10 his grievance (id.). He asserts the PLRA's purpose is to screen out meritless claims, this case
11 was found to have stated a claim, and that the case should be heard on its merits (id. at 5-6).

### 3. State Defendants' Reply

13 In their reply, State Defendants maintain that Plaintiff's grievance focused exclusively
14 on Webster's actions and did not provide prison officials fair opportunity to respond to the
15 claims against the remaining Defendants. State Defendants contend there are "no cases that
16 have considered the level of detail required by the ADC's grievance policy (DO 802) to
17 exhaust a claim against supervisory officials." (Doc. 65 at 6).

### III. Analysis

19 There is no dispute, and the record reflects, that Plaintiff exhausted his administrative
20 remedies with regard to Webster (Doc. 58, Ex. A; Doc. 63 at 3). The issue is whether that
21 exhaustion is sufficient to proceed with claims against State Defendants or if, as State
22 Defendants contend, Plaintiff must identify each individual and each legal theory in his
23 grievance before filing a § 1983 claim (Doc. 58 at 10-14).

24 The Court finds that State Defendants' motion must be denied. The necessary detail
25 required in the prison grievance procedure is defined by the prison itself, not the PLRA.
26 Jones, 549 U.S. at 218. Indeed, nothing in the PLRA "imposes a 'name all defendants'
27 requirement." Id. at 217 (citation omitted); Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir.
28 2010). The ADC prison grievance procedures are found in DO 802 and DI 287 (Doc. 58-1

1  at 13-31). Nothing in either policy requires inmates to name every party for eventual
2  litigation, nor does it require all possible legal theories to be laid out. See Doc. 58, Ex. B.
3  Further, an inmates' inmate letter—the first step in the grievance process—is limited to one
4  page and no attachments are permitted (Doc. 58-1 at 5). These limitations implicitly limit
5  an inmate's ability to lay out every detail, name every possible defendant, and describe each
6  possible legal theory. Additionally, the instructions on the ADC's inmate letter form are
7  similar to those described in Jones, when the Supreme Court explicitly found that a failure
8  to name all defendants does not automatically constitute a failure to exhaust. Id.; see Jones,
9  549 U.S. at 207, 217-18.

10  When the prison's grievance procedures are silent or incomplete regarding factual
11  specificity, the Ninth Circuit has adopted the Strong standard. Griffin, 557 F.3d at 1120; see
12  Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). The Strong standard requires that the
13  grievance alert the prison to the nature of the wrong sought to be addressed. Griffin, 557
14  F.3d at 1120.

> "A grievance need not include legal terminology or legal theories unless they are in some way needed to prove notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. **The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.**"

19  Id. (emphasis added).

20  In Griffin, the plaintiff fell from an upper bunk on two different occasions. Griffin,
21  557 F.3d at 1118. He filed a grievance requesting a ladder but did not mention a nurse's
22  order for a lower bunk assignment or that the prison staff disregarded that order. Id. at 1118-
23  19. The court found that the plaintiff's failure to grieve the legal theory of deliberate
24  indifference did not invalidate his exhaustion attempt; however, the inmate's failure to notify
25  the prison that its staff was not adhering to the medical order *did* result in a failure to exhaust.
26  Id. at 1120-21.

27  In this case, Plaintiff's grievance notified the prison of a serious problem and alerted
28  the prison to the nature of the wrong sought to be addressed. The grievance stated that

- 7 -

1  Plaintiff was handcuffed and beaten by Webster, Plaintiff unsuccessfully tried to obtain
2  Bravo to intervene, and Reagan opened the door to Plaintiff's cell to allow Webster access
3  (Doc. 31 at 3-4).  Further, Plaintiff's grievance requested termination of "all persons"
4  involved in his beating (Doc. 63 at 13-14).  Consequently, State Defendants' claim that
5  Plaintiff's grievance referred only to Webster's actions is incorrect (Doc. 58 at 10).  Plaintiff
6  did not, and is not required to, name every defendant in his initial grievance. Jones, 549 U.S.
7  at 217.  When applying the standard set forth in Griffin, the Court finds that Plaintiff
8  adequately notified the prison of the wrong sought to be addressed.[4]

9  This conclusion is supported when also considering the purpose of the exhaustion
10 requirement.  Benefits of exhaustion include allowing the prison to address complaints prior
11 to being sued, reducing litigation, and improving the quality of litigation.  Jones, 549 U.S.
12 at 219.   Exhaustion is not, however, a vehicle "to provide personal notice to a particular
13 official that he may be sued; the grievance is not a summons and complaint that initiates
14 adversarial litigation.'"  Id. (quoting Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004)).

15 For all these reasons, the Court finds that Plaintiff's grievances were sufficient to put
16 Defendants on notice of the claims against them.  State Defendants' Motion to Dismiss will
17 therefore be denied.

18 **IT IS THEREFORE ORDERED:**

19 (1) The reference to the Magistrate Judge is withdrawn as to State Defendants' Motion
20 to Dismiss (Doc. 58).

21 (2) State Defendants' Motion to Dismiss (Doc. 58) is **denied**.

22 DATED this 4th day of July, 2012.

Robert C. Broomfield
Senior United States District Judge

---

[4] None of the cases cited by State Defendants support a finding that Plaintiff failed to exhaust.  They are either factually inapposite or were decided before Jones.